# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ABM JANITORIAL SERVICES-NORTH CENTRAL, INC., Plaintiff, vs. PAMI RYAN TOWN CENTRE LLC, Defendant. | No. 08-CV-100-LRR **ORDER** |
| J.E.M.M. OF PINELLAS, INC., Plaintiff, vs. PAMI RYAN TOWN CENTRE LLC, Defendant. | 08-CV-123-LRR **ORDER** |

_____

## *I. INTRODUCTION*

The matter before the court is the Application for Appointment of Receiver ("Application") (docket no. 2-5 in case no. 08-CV-123-LRR),[1] which was filed by Plaintiff J.E.M.M. of Pinellas, Inc. d/b/a Bay Area Disaster Kleenup ("BADK").

## *II. RELEVANT PRIOR PROCEEDINGS*

On September 10, 2008, BADK filed the Application. On October 15, 2008, Defendant PAMI Ryan Town Centre LLC ("PAMI Ryan") filed an "Answer and Resistance" ("Resistance") (docket no. 18) to the Application. On October 16, 2008, BADK filed a "Brief in Support of the Application" ("Pl.'s Brief") (docket no. 26).

On October 16, 2008, the court held an evidentiary hearing ("Hearing") on the

---

[1] All docket entries refer to filings in case no. 08-CV-100-LRR unless expressly noted otherwise. Further procedural background is set forth in the Order (docket no. 33).

Application. Attorney Debra Rectenbaugh Pettit represented BADK. Attorneys Stephen D. Marso, Gary F. Eisenberg and Laura S. Halbreich represented PAMI Ryan.[2]

At the conclusion of the Hearing, the court afforded the parties the opportunity to file supplemental briefs on the Application. On October 27, 2008, PAMI Ryan filed a "Supplemental Brief in Resistance" ("Def.'s Brief") (docket no. 36) to the Application. BADK did not file a brief, and the time for doing so has passed. The Application is fully submitted and ready for decision.

### III. FACTUAL BACKGROUND

PAMI Ryan owns and leases certain real estate ("Real Estate") in downtown Cedar Rapids, Iowa. The Real Estate is commonly known as the "Town Centre" and consists of two five-story commercial buildings and a five-story parking ramp. PAMI Ryan owns the vast majority of the Real Estate and leases the remainder from the City of Cedar Rapids ("City"). The City owns an alleyway and a portion of Fourth Avenue SE onto which the parking ramp extends.

The first commercial building, 201 3rd Avenue SE ("the 201 Building"), was built in 1913 and contains approximately 100,000 square feet of office and retail space. The other building, 221 3rd Avenue SE ("the 221 Building"), was built in 1991 and contains approximately 106,000 square feet of office and other space. The parking ramp, 218 4th Avenue SE ("the parking ramp"), was built in 1965 and contains 273 parking spaces and 25,000 square feet of office and other space.

The Great Flood of 2008 severely damaged the two commercial buildings and the parking ramp. Almost all tenants were forced to evacuate. PAMI Ryan temporarily suspended rent payments while the tenants were evacuated.

---

[2] Attorneys Jeffrey A. Stone and Roger W. Stone represented Plaintiff ABM Janitorial Services-North Central, Inc. d/b/a ABM Janitorial Services at Hearing. ABM resisted a motion to dismiss the Application and apparently takes the position that a receiver is appropriate. However, ABM did not join the Application.

PAMI Ryan contacted ABM Janitorial Services-North Central, Inc. d/b/a ABM Janitorial Services ("ABM") to obtain services for the cleanup, restoration and security of the Real Estate. BADK was one of ABM's subcontractors. BADK alleges that PAMI Ryan owes BADK approximately $1.3 million for work performed at the Real Estate.

## IV. CHOICE OF LAW

BADK and PAMI Ryan disagree as to whether federal or state law governs the appointment of a receiver in federal court. Whereas BADK contends "[r]eceivership is governed by Iowa Code Chapter 680[.1]," Pl.'s Brief at 3, PAMI Ryan asserts "appointment of a receiver in diversity cases is governed by federal law, not state law." Def.'s Brief at 36.

"The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) (citing in part Fed. R. Civ. P. 66 ("These rules govern an action in which the appointment of a receiver is sought . . . .")); *see, e.g.*, *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (holding federal law governs the appointment of a receiver in federal court);[3]

---

[3] The Eleventh Circuit Court of Appeals reasoned as follows:
> The conclusion that federal law governs the appointment of receivers is based on several considerations. First and foremost, the appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the action. The conclusion that federal law governs the appointment of a receiver thus does not conflict with the *Erie* doctrine's requirement that state law apply to matters of substance.
>
> Second, Federal Rule of Civil Procedure 66 and the accompanying Advisory Committee's Note assert the primacy of federal law in the practice of federal receiverships. Thus, to the extent Rule 66 dictates what principles should be applied

(continued…)

*Chase Manhattan Bank, N.A. v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26 (1st Cir. 1982) ("Most federal court decisions dealing with the appointment of a receiver pendente lite appear to apply federal law without discussion."). These is a diversity case. *See* Order (docket no. 33), at 7 (finding diversity subject-matter jurisdiction over these consolidated cases under 28 U.S.C. § 1332(a)(1)). Accordingly, the court shall apply federal law to determine whether to appoint a receiver. Iowa Code § 680.1 is a "dead letter" in federal court, and this court shall not apply it. *See Midwest Sav. Ass'n v. Riversbend Assocs. P'ship*, 724 F. Supp. 661, 661 (D. Minn. 1989) ("Federal courts are not bound by state law in determining whether [to appoint a receiver].") (citing *Mintzer v. Arthur L. Wright Co.*, 263 F.2d 823, 826-27 (3d Cir. 1959) (Goodrich & Kalodner, JJ., concurring)).

## V. ANALYSIS

"A receiver is an extraordinary equitable remedy that is only justified in extreme situations." *Aviation Supply*, 999 F.2d at 316.

> Although there is no precise formula for determining when a receiver may be appointed, [six] factors typically warranting appointment are [(1)] a valid claim by the party seeking the appointment; [(2)] the probability that fraudulent conduct has occurred or will occur to frustrate that claim; [(3)] imminent danger that property will be concealed, lost, or diminished in value; [(4)] inadequacy of legal remedies; [(5)] lack of a less drastic equitable remedy; [(6)] and likelihood that appointing the receiver will do more good than harm.

*Id.* at 316-17. The court has wide discretion in deciding whether to appoint a receiver.

---

[3](…continued)
  to federal receiverships, courts must comply with the Rule even in the face of differing state law.

*Nat'l P'ship Inv.*, 153 F.3d at 1291-92 (citations and footnotes omitted).

*See id.* at 317 (reviewing for abuse of discretion).

Considering the foregoing six factors as applied to the facts of the instant case, the court declines to appoint a receiver. The court discusses each of the six factors, in turn.

First, the court assumes without deciding that BADK has a valid claim against PAMI Ryan; that is, the court assumes BADK's mechanic's lien in the amount of approximately $1.3 million against the Real Estate is valid in the instant case, pursuant to Iowa Code chapter 572. This factor weighs in favor of appointing a receiver.

Second, the court finds that there is little to no probability that fraudulent conduct has occurred or will occur to frustrate BADK's claim. BADK did not present any evidence of fraudulent conduct at the Hearing. This is not a case in which there is evidence of self-dealing or other impropriety. PAMI Ryan may have trouble paying some of its bills in a timely fashion, but it has not engaged in any fraudulent conduct. Instead, it retained NAI Ruhl & Ruhl ("Ruhl & Ruhl"), an experienced and professional property management firm, to oversee the restoration of the Real Estate. The court found Mr. John W. Viggers, Ruhl & Ruhl's Regional Vice President, to be a competent, honest and forthright witness and does not doubt that he is doing his best to return the Real Estate to its condition before the Great Flood of 2008. This factor weighs against appointing a receiver.

Third, the court finds that there is no imminent danger that the Real Estate will be concealed, lost or diminished in value. The Great Flood of 2008 severely diminished the value of the Real Estate, not PAMI Ryan. Mr. Viggers is working hard under difficult conditions to improve the Real Estate and thereby increase its value. The 221 Building has already reopened and most tenants have returned. While no tenants have returned to the 201 Building, Mr. Viggers is diligently trying to restore electricity to the 201 Building so that its tenants may also return. This factor weighs against appointing a receiver.

Fourth and Fifth, the parties did not address whether BADK lacks adequate legal

remedies or whether less drastic remedies are unavailable. These two factors thus do not weigh for or against appointing a receiver.

Sixth, the court finds that appointing a receiver will do more harm than good. The Real Estate is already in Mr. Vigger's capable hands. Appointing a receiver would do little more than substitute one property management company, Ruhl & Ruhl, for another, Heritage Associates Corporation ("Heritage"). Mr. Viggers has more familiarity with the Real Estate and, in any event, is more experienced in large-scale commercial property management than Heritage's President, Thomas M. Slattery. Appointing a receiver in this case would only increase costs and delay. This factor thus weighs against appointing a receiver.

When all of the foregoing six factors are weighed and balanced against one another, the court finds that a receiver is not appropriate. Put simply, this is not an "extreme situation" in which a receiver is warranted. *Aviation Supply*, 999 F.2d at 316.

## VI. CONCLUSION

The Application (docket no. 2-5 in case no. 08-CV-123-LRR) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 31st day of October, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA