# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ABM JANITORIAL SERVICES – NORTH CENTRAL, INC., | |
| Plaintiff, | No. 08-CV-100-LRR |
| vs. | ORDER |
| PAMI RYAN TOWN CENTRE LLC, | |
| Defendant. | |
| J.E.M.M. OF PINELLAS, INC., | |
| Plaintiff, | 08-CV-123-LRR |
| vs. | ORDER |
| PAMI RYAN TOWN CENTRE LLC, | |
| Defendant. | |

The matter before the court is the Motion to Approve Consent Judgment (docket no. 84 in case no. 08-CV-100-LRR), which was filed by ABM Janitorial Services – North Central, Inc. ("ABM"). PAMI Ryan Town Centre LLC ("PAMI Ryan") and J.E.M.M. of Pinellas, Inc. d/b/a Bay Area Disaster Kleenup ("BADK") have agreed to the instant Consent Judgment.

## I. BACKGROUND

The Court has previously considered the factual background of this dispute:

> PAMI Ryan owns and leases certain real estate ("Real Estate") in downtown Cedar Rapids, Iowa. The Real Estate is commonly known as the "Town Centre" and consists of two five-story commercial buildings and a five-story parking ramp. PAMI Ryan owns the vast majority of the Real Estate and leases the remainder from the City of Cedar Rapids

> ("City"). The City owns an alleyway and a portion of Fourth Avenue SE onto which the parking ramp extends.
>
> The first commercial building, 201 3rd Avenue SE ("the 201 Building"), was built in 1913 and contains approximately 100,000 square feet of office and retail space. The other building, 221 3rd Avenue SE ("the 221 Building"), was built in 1991 and contains approximately 106,000 square feet of office and other space. The parking ramp, 218 4th Avenue SE ("the parking ramp"), was built in 1965 and contains 273 parking spaces and 25,000 square feet of office and other space.
>
> The Great Flood of 2008 severely damaged the two commercial buildings and the parking ramp. Almost all tenants were forced to evacuate. PAMI Ryan temporarily suspended rent payments while the tenants were evacuated.
>
> PAMI Ryan contacted ABM Janitorial Services-North Central, Inc. d/b/a ABM Janitorial Services ("ABM") to obtain services for the cleanup, restoration and security of the Real Estate.

(docket no. 37).

On August 1 and 8, 2008, respectively, ABM perfected its mechanic's lien by filing a mechanic's lien and an amended mechanic's lien on the Town Centre Building. ABM's mechanic's lien was in the amount of $3,900,578.13, filed in the Iowa District Court in and for Linn County, and captioned LNLN021181.

On August 11 and September 19, 2008, respectively, BADK perfected its mechanic's lien by filing a mechanic's lien and an amended mechanic's lien on the Town Centre Building. BADK's mechanic's lien was in the amount of $1,294,003.22, filed in the Iowa District Court in and for Linn County, and captioned LNLN021194.

On August 11, 2008, ABM filed a complaint in this Court seeking to foreclose on its mechanic's lien. On September 10, 2008, BADK filed a Petition to Foreclose Mechanic's Lien in the Iowa District Court for Linn County. PAMI Ryan removed BADK's Petition to Foreclose Mechanic's Lien to this Court. BADK's Petition to

Foreclose Mechanic's Lien was consolidated with ABM's complaint seeking to foreclose on its mechanic's lien in civil action no. 08-cv-100.

On September 10, 2009, ABM filed a Motion to Approve Consent Judgment. The Consent Judgment is signed by ABM, BADK, and PAMI Ryan. The Consent Judgment seeks (1) to establish the validity of ABM's and BADK's mechanic's liens, (2) to appoint a receiver to take possession of the Town Centre, and (3) to provide for the orderly disposition of the Town Centre.

## II. CONSENT JUDGMENT

A consent judgment is reviewed for fairness, reasonableness, and adequacy. *United States v. Metro St. Louis Sewer Dist.*, 569 F.3d 829, 841 (8th Cir. 2009) (quoting *United States v. Metro St. Louis Sewer Dist.*, 952 F.2d 1040, 1044 (8th Cir. 1992)).

### A. Mechanic's Liens

ABM's and BADK's mechanic's liens are valid under Iowa law. Iowa Code section 572.2 provides:

> Every person who shall furnish any material or labor for, or perform any labor upon, any building or land for improvement, alteration, or repair thereof, . . . by virtue of any contract with the owner, contractor, or subcontractor shall have a lien upon such building or improvement . . . to secure payment for the material or labor furnished or labor performed.

*Id.* To establish the amount of a mechanic's lien in the absence of a lump-sum contract, a mechanic's lienor must establish the reasonable value of the materials furnished and labor provided. *Denniston & Partridge Co. v. Mingus*, 179 N.W.2d 748, 753 (Iowa 1970).

Here, ABM and BADK established the reasonable value of the restoration work. John Viggers, the property manager for the Town Centre, testified the "labor, equipment, mobilization, materials . . . was reasonable to get [the Town Centre] through that process." Furthermore, PAMI Ryan ceased challenging the validity of ABM's and BADK's mechanic's liens. The court finds ABM has a valid mechanic's lien in the

amount of $3,900,578.13 and BADK has a valid mechanic's lien in the amount of $1,294,003.22.

### B. Receivership

The court has previously considered the law of receiverships:

> "A receiver is an extraordinary equitable remedy that is only justified in extreme situations." [*Aviation Supply Corp. v. Barber*, 999 F.2d 314, 316 (8th Cir. 1993).]
>> Although there is no precise formula for determining when a receiver may be appointed, [six] factors typically warranting appointment are [(1)] a valid claim by the party seeking the appointment; [(2)] the probability that fraudulent conduct has occurred or will occur to frustrate that claim; [(3)] imminent danger that property will be concealed, lost, or diminished in value; [(4)] inadequacy of legal remedies; [(5)] lack of a less drastic equitable remedy; [(6)] and likelihood that appointing the receiver will do more good than harm. Id. at 316-17. The court has wide discretion in deciding whether to appoint a receiver.
>
> *Id.* at 316-17. The court has wide discretion in deciding whether to appoint a receiver. *See id.* at 317 (reviewing for abuse of discretion).

(docket no. 37). "[T]he court may appoint a receiver of mortgaged property to protect and conserve it pending foreclosure ... or of property which a judgment creditor seeks to have applied to the satisfaction of his judgment." *Gordon v. Washington*, 295 U.S. 30, 37 (1935) (internal citations omitted). The court discusses each of the six factors, in turn.

First, ABM and BADK have valid claims against PAMI Ryan. PAMI Ryan agreed to the validity of the mechanic's liens and the amount of the mechanic's liens is reasonable. This factor weighs in favor of appointing a receiver.

Second, the court finds that there is little to no probability that fraudulent conduct has occurred or will occur. Neither ABM nor BADK argued this factor supports the appointment of a receiver. This factor weighs against appointing a receiver.

Third, the Town Centre has not returned to its pre-flood condition. Without some change, the value of the property will not return to its pre-flood condition. There is an imminent danger that the Town Centre will diminish in value if there is no management of the property. This factor weighs in favor of appointing a receiver.

Fourth, there is no legal remedy to protect against the waste of the Town Centre pending disposition of the property. Some type of management is needed. Legal remedies cannot provide the needed management. This factor weighs in favor of appointing a receiver.

Fifth, no less drastic equitable remedy will protect and conserve the Town Centre. The appointment of a receiver may be justified "to preserve and protect the property pending its final disposition." *Gordon*, 295 U.S. at 37. A receiver is needed to manage the Town Centre pending the orderly disposition of the property. This factor weighs in favor of appointing a receiver.

Sixth, the appointment of Todd Barker as receiver will do more good than harm. Mr. Barker's prior experience with the Town Centre makes him particularly qualified to act as receiver. PAMI Ryan agrees that interim management is needed. This factor weighs in favor of appointing a receiver.

Changed circumstances now justify appointing a receiver, even though the court denied a previous Application for Appointment of Receiver. The Town Centre has not returned to its pre-flood condition. PAMI Ryan now agrees to the appointment of a receiver. Now, when all of the foregoing six factors are weighed and balanced against one another, the court finds that a receiver is appropriate. This is now an "extreme situation" in which a receiver is warranted. *Aviation Supply*, 999 F.2d at 316.

### C. Disposition of Town Centre

The parties have negotiated a consensual transfer of title to the Town Centre in lieu of proceeding to a foreclosure sale, although ABM and BADK reserve the right to foreclose on the property. A consensual transfer of title may be preferred in this circumstance, because it avoids the delays of a foreclosure sale. *See Murray v. Kelroy*, 275 N.W.2d 21, 24 (Iowa 1937). The court finds the negotiated consensual transfer of title to be fair, reasonable, and adequate.

### III. CONCLUSION

IT IS HEREBY ORDERED:

(1) The Motion to Approve Consent Judgment (docket no. 84) is **GRANTED**.

(2) The Clerk of Court is directed to detach and separately file the Consent Judgment in docket no. 08-cv-100-LRR.

(3) The Consent Judgment is hereby expressly incorporated into this Order and the Court retains jurisdiction to enforce the Consent Judgment.

(4) Todd Barker is ordered to appear before the court so that the receiver's oath may be administered.

(5) PAMI Ryan's Motions for Summary Judgment (docket nos. 50 and 51) are denied as moot.

(6) ABM's Motion for Partial Summary Judgment (docket no. 52) is denied as moot.

(7) BADK's Motion for Summary Judgment (docket no. 53) is denied as moot.

Dated: September 11 2009

THE HONORABLE LINDA R. READE,
CHIEF JUDGE OF THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN
DISTRICT OF IOWA