IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| ABM JANITORIAL SERVICES – NORTH CENTRAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PAMI RYAN TOWN CENTRE LLC, <br><br> Defendant. | No. 08-CV-100-LRR <br><br><br> ORDER |
| J.E.M.M. OF PINELLAS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PAMI RYAN TOWN CENTRE LLC, <br><br> Defendant. | 08-CV-123-LRR <br><br><br> ORDER |

The matters before the court are the Motion for Approval of Receiver's Fee (docket no. 90 in case no. 08-CV-100-LRR), the Motion for Termination of Receivership (docket no. 91 in case no. 08-CV-100-LRR), and the Motion for Relief from a Judgment (docket no. 92 in case no. 08-CV-100-LRR), all of which were filed by ABM Janitorial Services – North Central, Inc. ("ABM").

## I. BACKGROUND

The Court has previously considered the factual background of this dispute:

> PAMI Ryan [Town Centre LLC ("PAMI Ryan")] owns and leases certain real estate ("Real Estate") in downtown Cedar Rapids, Iowa. The Real Estate is commonly known as the "Town Centre" and consists of two five-story commercial buildings and a five-story parking ramp. PAMI Ryan owns the vast majority of the Real Estate and leases the

> remainder from the City of Cedar Rapids ("City"). The City owns an alleyway and a portion of Fourth Avenue SE onto which the parking ramp extends.
>
> The first commercial building, 201 3rd Avenue SE ("the 201 Building"), was built in 1913 and contains approximately 100,000 square feet of office and retail space. The other building, 221 3rd Avenue SE ("the 221 Building"), was built in 1991 and contains approximately 106,000 square feet of office and other space. The parking ramp, 218 4th Avenue SE ("the parking ramp"), was built in 1965 and contains 273 parking spaces and 25,000 square feet of office and other space.
>
> The Great Flood of 2008 severely damaged the two commercial buildings and the parking ramp. Almost all tenants were forced to evacuate. PAMI Ryan temporarily suspended rent payments while the tenants were evacuated.
>
> PAMI Ryan contacted ABM Janitorial Services-North Central, Inc. d/b/a ABM Janitorial Services ("ABM") to obtain services for the cleanup, restoration and security of the Real Estate.

(docket no. 37). ABM subcontracted with Clean Response, Inc. to provide restoration services at the Town Centre. Clean Response, Inc. in turn subcontracted with J.E.M.M. of Pinellas, Inc. d/b/a Bay Area Disaster Kleenup ("BADK") to perform a portion of the restoration work.

After completing the restoration work, ABM and BADK filed mechanic's liens on the Town Centre. ABM and BADK also filed foreclosure actions against PAMI Ryan.

A Consent Judgment was entered on September 11, 2009. The Consent Judgment established the validity of ABM's and BADK's mechanic's liens, appointed Todd Barker as Receiver for the Town Centre, and provided for the orderly disposition of the Town Centre.

Todd Barker, as Receiver, has taken possession of the Town Centre. The Receiver has managed the Town Centre for the last two and a half months. The Receiver specifically has overseen the installation of boilers, communicated with tenants, filed an

application for abatement of real estate taxes, terminated service contracts and performed other various services. The Receiver and Succession, LC entered into a purchase agreement for the sale of the Town Centre Building. The sale price was $5,400,000.

Under the terms of the Consent Judgment, PAMI Ryan was entitled to a Transfer Fee, which was a specific percentage of the sale proceeds. PAMI Ryan received the $120,000 Transfer Fee by wire on December 1, 2009. In exchange, PAMI Ryan executed and delivered (1) a deed to the Town Centre, (2) a Declaration of Value, (3) Groundwater Hazard Statement, (4) Release of Real Estate Mortgage and Termination of Assignment of Leases and Rents, (5) Assignment and Assumption of Leases, (6) Blanket Conveyance, Bill of Sale, and Assignment, and (7) Assignment of Tenant Leases and Security Deposits (collectively, the "Transfer Documents").

## II. RECEIVERSHIP

"The receiver is an officer of the court and subject to its orders in relation to the property for which he is responsible until discharged by the court." *Fed. Sav. & Loan Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515, 521 (7th Cir. 1980).

### A. The Receiver's Fees

The first matter before the court is the Motion for Approval of Receiver's Fee. The Consent Judgment provided the Receiver shall be compensated at a rate of $150/hour. The Receiver's Fee totaled $42,422.50.

A Receiver's compensation for services "'is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs entrusted to him, and the perplexity and difficulty involved in that management.'" *Trustees Corp. v. Kansas City, M & O Ry Co.*, 26 F.2d 876, 881 (8th Cir. 1928) (quoting *Stuart v. Boulware*, 133 U.S. 78, 82 (1890)). "[T]here is a discretion in the court appointing the receiver as to who shall be charged with the costs of the receivership." *Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1003 (8th Cir. 1939). "The court in equity may award the receiver fees

from property securing a claim if the receiver's acts have benefitted that property." *SEC v. Elliott*, 953 F.2d 1560, 1576 (11th Cir. 1992).

The Receiver managed the Town Centre from September 16 through November 30, 2009. The Receiver preserved and protected the Town Centre. The Receiver's actions made possible the sale of the Town Centre. A Receiver's Fee of $42,422.50 is consistent with the value of the services provided. The Receiver's Fee is reasonable according to the circumstances. Because the Receiver acted to maximize the sale price of the Town Centre, the Receiver's Fee shall be satisfied from the sale proceeds of the Town Centre.

### B. Termination of Receivership

The second matter before the court is the Motion for Termination of the Receivership.

Federal Rule of Civil Procedure 66 provides "[a]n action in which a receiver has been appointed may be dismissed only by court order." "The district court possesses a broad range of discretion in deciding whether or not to terminate an equity receivership." *SEC v. An-Car Oil Co.*, 604 F.2d 114, 119 (1st Cir. 1979). A receivership should be terminated after the receiver has finished its charged tasks. *See id.* at 119-20.

The Receiver was appointed in part to preserve and protect the Town Centre pending its disposition. Because the Town Centre Building is being conveyed to Succession, LC, a primary reason that justified the appointment of a receiver no longer exists. The Receiver has completed its charged tasks of preserving and protecting the Town Centre. The Receivership should now be terminated because the Town Centre has new ownership.

### III. RELIEF FROM CONSENT JUDGMENT

The third matter before the court is the Motion for Relief from Judgment.

The Consent Judgment provided for the consensual transfer of the Town Centre. In exchange for the Transfer Fee, PAMI Ryan agreed to execute and deliver the Transfer

Documents. PAMI Ryan received the Transfer Fee and validly and lawfully executed and delivered the Transfer Documents.

Federal Rule of Civil Procedure 60(b)(5) provides "[o]n motion and just terms, the court may relieve a party . . . from a final judgment . . . [if] the judgment has been satisfied, released or discharged." "[A] district court does not have discretion to require two satisfactions." *Sunderland v. Philadelphia*, 575 F.2d 1089, 1090 (3rd Cir. 1978). Here, the obligations under the Consent Judgment are complete. PAMI Ryan received the $120,000 Transfer Fee. In exchange, Jeffrey Fitts, as an Authorized Signatory, validly and lawfully executed and delivered the Transfer Documents on behalf of PAMI Ryan. The obligations assumed under the Consent Judgment have been satisfied.

## IV. CONCLUSION

IT IS HEREBY ORDERED:

(1) The Motion for Approval of Receiver's Fee (docket no. 90) is **GRANTED**.

(2) The Motion for Termination of Receivership (docket no. 91) is **GRANTED** and Todd Barker only has authority to pay accrued expenses, provide a final accounting to ABM and BADK, and distribute any remaining funds according to paragraph 21 of the Consent Judgment.

(3) The consensual transfer of the Town Centre to Succession, LC is consistent with the Consent Judgment and is hereby **APPROVED**, and Motion for Relief from a Judgment (docket no. 92) is **GRANTED**.

Dated: 12/3/09

THE HONORABLE LINDA R. READE,
CHIEF JUDGE OF THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN
DISTRICT OF IOWA

5